# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **KEVIN DOOLEY KENT, in his capacity as Receiver for Broad Reach Capital, LP,** *et al.*,<br><br>    Plaintiff,<br><br>    v.<br><br>**RICHARD SHAWN ELLIS,** *et al.*,<br><br>    Defendants. | Case No. 21–cv–20754–MCA–ESK<br><br>**OPINION AND ORDER** |

**KIEL**, **U.S.M.J.**

    **THIS MATTER** is before the Court on defendants' motion to transfer this action to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a) (Motion). (ECF Nos. 26, 28.) Plaintiff filed an opposition to the Motion (ECF No. 36), to which defendants filed a reply (ECF No. 37). I heard oral argument on September 28, 2022 (minute entry before ECF No. 40) and pursuant to the order entered thereafter (ECF No. 41), defendants filed a supplemental submission in further support of the Motion (ECF No. 42). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

    On December 23, 2021, plaintiff, in his capacity as the Court-appointed receiver in *SEC v. Smith* (Case No. 19-cv-17213),[1] commenced "this action to recover, and avoid the fraudulent transfer(s) of … [a]ssets made by certain …

---

[1] In *SEC v. Smith*, the SEC filed an action in the District of New Jersey against Brenda Smith (Smith) and her affiliated entities (Receivership Parties) for engaging in investment fraud. (ECF No. 1 pp. 2, 3.) The Receivership Parties relevant to this matter are: (1) Broad Reach Capital, LP; (2) CV Investments LLC; (3) TA 1, LLC; and (4) Investment Consulting LLC. (*See id.* p. 9.)

Receivership Parties to and/or on behalf of … [d]efendants." (ECF No. 1 p. 5.) Through the following "byzantine" and "questionable transactions, the Receivership Parties [allegedly] lost all of the money [they] paid to … [d]efendants, without deriving any benefit": (1) the Mainspring Transaction; (2) the Dubai Tank Farm Project; and (3) the Cowlitz Transaction. (*Id.* pp. 13–15.) "[U]nder theories of fraudulent transfer, unjust enrichment, breach of contract, and breach of fiduciary duty," plaintiff seeks to recover the $9.247 million, plus interest, that "Smith caused" the Receivership Parties to transfer to defendants in her "fraudulent scheme." (*Id.* pp. 5, 6, 13.) Plaintiff also demands a full accounting. (*Id.* pp. 6, 15.)

## I. MAINSPRING TRANSACTION

In April 2017, "Smith caused" TA1 to loan $100,000 to Mainspring, LLC, which is an entity registered to Richard Shawn Ellis. (*Id.* pp. 10, 14, 25.) While this loan was made upon Ellis's request to fund a trip to Dubai, it is not evidenced by a written agreement. (*Id.* pp. 14, 25, 26.) The loan has allegedly not yet been repaid. (*Id.* pp. 14, 25, 26.)

## II. DUBAI TANK FARM PROJECT

The Dubai Tank Farm Project was purported to be a project to invest in oil and gas facilities in the United Arab Emirates (UAE). (*Id.* pp. 17, 19.) In January 2017, Richard Galvin — a business associate of Smith (*Id.* p. 17) — entered into the "Funding and Investment Agreement" (Dubai Funding Agreement) with Ellis (*Id.* pp. 120–124). Pursuant to the Dubai Funding Agreement, Galvin agreed to loan Ellis $1.7 million to purchase real property in Colorado in exchange for Ellis identifying investment opportunities for Galvin in the UAE. (*Id.* pp. 18, 19, 120.) The loan would be forgiven if Galvin elected to fund a project that Ellis assisted in identifying. (*Id.* pp. 20, 121.) However, if Galvin did not fund a project identified by Ellis, the obligation to repay the loan would not be waived. (*Id.* pp. 20, 121.)

In satisfaction of the Dubai Funding Agreement's payment schedule, "Smith caused $200,000[] to be transferred to … Ellis … from … Broad Reach Capital" in February 2017. (*Id.* p. 20.) Smith and Broad Reach Capital were, however, not parties to the Dubai Funding Agreement and were not obligated to make these payments. (*See id.* pp. 120–124.) In fact, "[n]o agreement exists to evidence why this happened." (ECF No. 36 p. 10.) Furthermore, "Broad Reach [Capital] received … neither a promissory note, nor a security interest on the Colorado [real property] that Ellis purchased with the money." (*Id.*)

In March 2017, Galvin, Ellis, and CV Investments, among others, entered into a settlement agreement "reliev[ing] [Galvin] of any and all obligations under the [Dubai Funding Agreement]" (Dubai Settlement Agreement). (ECF No. 1 p. 21; ECF No. 27-3 p. 7.) In April 2017, Ellis, Galvin and CV Investments then executed the "First Amendment to the Funding and Investment Agreement" (Amended Dubai Funding Agreement). (ECF No. 1 pp. 129–131). Pursuant to the Amended Dubai Funding Agreement, CV Investments assumed Galvin's obligations under the Dubai Funding Agreement and was to pay Ellis $1.5 million, which was the remaining amount of the $1.7 million to be loaned to Ellis. (*Id.* pp. 21, 22, 129.) CV Investments, however, made no such payment. (*See id.* p. 22.) Instead, in May 2017, "Smith caused" TA1, which was a party to neither the Dubai Funding Agreement nor the Amended Dubai Funding Agreement, to divest $1.5 million of its investors' funds to Ellis. (*Id.*)

In August 2017, various individuals and entities, including Ellis and Smith, on behalf of herself and CV Investments, amended the Dubai Settlement Agreement (Amended Dubai Settlement Agreement). (ECF No. 27-4.) Although Broad Reach Capital and TA1 were the entities that funded the loan to Ellis, the Amended Dubai Settlement Agreement provided that "Smith and CV [Investments] acknowledge[d] and agree[d] that the [$1.7 million] loan made by CV [Investments] to Ellis … is forgiven in its entirety." (*Id.* p. 3; ECF No. 1 p. 24.) Broad Reach Capital and TA1 were notably also not parties to the Dubai

3

Settlement Agreement or Amended Dubai Settlement Agreement. (*See* ECF Nos. 27-3; 27-4.)

Plaintiff alleges that there is no indication — and defendants have not submitted any evidence to the contrary — that the condition precedent for loan forgiveness was met, *i.e.*, that Galvin or any other Receivership Party invested in a project identified by Ellis in the UAE. (ECF No. 1 p. 24; ECF No. 36 pp. 11, 12.) Accordingly, plaintiff alleges that the agreements executed in connection with the Dubai Tank Farm Project are sham documents prepared to cover up the fraudulent-nature of the loans. (ECF No. 1 p. 24; ECF No. 36 pp. 11, 12.)

### III. COWLITZ TRANSACTION

The Cowlitz Transaction was purported to be related to the development of a restaurant in the State of Washington by Rose & Thorn Cowlitz, LLC (RTC), which is another entity registered to Ellis. (ECF No. 1 pp. 14, 27.) Although no evidence exists that Smith and the Receivership Parties agreed to develop the restaurant, "Smith caused" certain Receivership Parties to transfer $7.447 million to RTC in various installments. (*Id.* pp. 14, 26–28.)

From December 2016 through March 2017, "Smith caused" Broad Reach Capital to transfer almost $3.8 million to RTC. (*Id.* pp. 26, 27.) Then in April 2017, RTC executed a promissory note promising to repay CV Investments up to $8 million, plus interest (Cowlitz Promissory Note).[2] (*Id.* pp. 28, 29, 133; *see* ECF No. 27-1 p. 2.) CV Investments, however, "never loaned money to [RTC] before or after the execution of the [Cowlitz Promissory] [N]ote." (ECF No. 36 p. 14.)

---

[2] While the Cowlitz Promissory Note was between RTC and CV Investments, only Ellis, in his capacity as owner and "[m]anager" of Rose & Thorn HQ, LLC (RTHQ) — the sole member of RTC — signed the Cowlitz Promissory Note. (ECF No. 1 pp. 134, 135.) At this time, Ellis appears to also have been acting on behalf of CV Investments with a power of attorney. (*See id.* pp. 21, 126, 127.) Smith and CV Investments appointed Ellis as an attorney-in-fact in March 2017 to "[n]egotiate, execute, acknowledge and deliver … on behalf of [Smith and CV Investments], all documents and agreements related to [RTC]" and other entities. (*Id.* p. 126.)

4

Instead, between April 2017 and August 2017, "Smith caused" Broad Reach Capital, TA1, and Investment Consulting to collectively transfer about $3.7 million more to RTC. (ECF No. 1 p. 27.)

In July 2017, Ellis, RTC, RTHQ, Smith, and CV Investments entered into a settlement agreement (Cowlitz Settlement Agreement).[3] (*Id.* pp. 29–33; ECF No. 27-1.) As plaintiff notes, the Cowlitz Settlement Agreement "intertwine[d]" the obligations connected to the Cowlitz Transaction with a separate real estate project involving Galvin, referred to as the Stout Project. (ECF No. 27-1; ECF No. 36 p. 15.) In relevant part, the Cowlitz Settlement Agreement restructured the payment obligations between RTC and CV Investments and transferred to Newco — "a new entity owned or controlled by Ellis … to purchase the land and hotel … [for] … the Stout Project" — the balance owed by RTC to CV Investments. (ECF No. 27-1 p. 2.)

Ellis, RTC, RTHQ, Smith, and CV Investments then executed in November 2017 an amended Cowlitz Settlement Agreement (Amended Cowlitz Settlement Agreement).[4] (ECF No. 27-2.) The Amended Cowlitz Settlement Agreement described the executing parties' obligations under two scenarios where the Newco referred to in the Cowlitz Settlement Agreement either elects to purchase the Stout Project or does not. (*Id.* pp. 2, 3.) In either situation though, the Amended Cowlitz Settlement Agreement purported to alter and/or forgive a portion of the balance owed to CV Investments. (*Id.*) To date, the Receivership Parties have received no return. (ECF No. 1 pp. 38–41.)

---

[3] At the time the Cowlitz Settlement Agreement was executed, Ellis appears to still have been serving as the attorney-in-fact under the power of attorney for Smith and CV Investments. (*See* ECF No. 27-1 p. 8; ECF No. 36 p. 15.)

[4] Frolic & Revelry, LLC was also a party to the Amended Cowlitz Settlement Agreement. (ECF No. 27-2 p. 2.) Plaintiff believes that Frolic & Revelry, LLC was in actuality "the Newco" from the July Settlement Agreement. (ECF No. 1 p. 38.)

## ANALYSIS

In determining whether to transfer this action under §1404(a), I must first determine whether plaintiff's claims are subject to a mandatory forum selection clause. If they are, then this action would likely be transferred. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 57 U.S. 49, 66 (2013) (holding that district courts should enforce valid forum selection clauses "in all but the most unusual cases"); *see also* 28 U.S.C. §636(b)(1)(A) (designating a Magistrate Judge with the authority to decide whether to transfer an action to another venue).

### I. THE FORUM SELECTION CLAUSES

Since the Mainspring Transaction was not bound by a written agreement, there is no forum selection clause to consider as to plaintiff's claim to seek return of the $100,000 loan paid by TA1. However, as to the Dubai Tank Farm Project and Cowlitz Transaction, the parties dispute whether plaintiff's claims are subject to the forum selection clause included in the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement. The forum selection clause in the Amended Dubai Settlement Agreement states: "Any action to enforce *this Agreement* shall be brought only in the courts located in Denver, Colorado." (ECF No. 27-2 p.9 (emphasis added).) Similarly, the forum selection clause in the Amended Cowlitz Settlement Agreement states: "Any action to enforce *this Agreement* shall be brought only in the courts located in Denver, Colorado." (ECF No. 27-4 p.6 (emphasis added).)

Given the use of the phrase "shall" in the forum selection clause of the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement, the parties do not dispute that Colorado is designated as the mandatory forum. [5] *See Pro Custom Solar LLC v. Freedom Forever, LLC*, No.

---

[5] I note that the forum selection clause in the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement do not specify what court in

6

20-09994, 2021 WL 2177513, at *3 (D.N.J. May 28, 2021) (discussing how the use of words such as "shall" and "will" transform a forum selection clause from permissive to mandatory); *Sept. Props. LLC v. Millionaire Gallery, Inc.*, No. 18-00988, 2018 WL 4466066, at *5, 6 (E.D. Pa. Sept. 18, 2018) (finding that when a forum selection clause "does not exclude jurisdiction elsewhere," the forum selection clause is permissive).

## II. THE SCOPE OF THE FORUM SELECTION CLAUSES

The parties do, however, dispute whether plaintiff's claims are subject to these forum selection clauses. Plaintiff argues that his claims are not subject to the forum selection clauses because instead of seeking to "enforce" the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement, he is seeking to avoid the transfers of money themselves. (ECF No. 36 pp. 22–28.) In contrast, defendants argue that what plaintiff seeks to avoid are the forgiveness of the loans under to the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement. (ECF No. 37 pp. 4–10.) Thus, defendants' assert that plaintiff's claims fall squarely within the scope of the forum selection clauses. (*Id.*)

---

Denver, Colorado has exclusive jurisdiction. (*See* ECF No. 27-2 p. 9; ECF No. 27-4 p. 6.) Nevertheless, defendants argue that pursuant to these forum selection clauses, this action should be transferred to the United States District Court for the District of Colorado. (ECF No. 26 p. 4; ECF No. 28 p. 4.) Generally, when a forum selection clause fails to specify what court in the selected state or county has jurisdiction, the forum selection clause is not enforceable. *Kocks Crane, Inc. v. S. Jersey Port Corp.*, No. 06–00959, 2006 WL 3677803, at *2 (D.N.J. Dec. 7, 2006) (determining that the phrase "in a Court of Law under the jurisdiction of the County of Camden" was too ambiguous to be enforced as a forum selection clause because the phrase was unclear as to whether it applied to the action and did not expressly specify what court in the selected county had jurisdiction); *but see Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F.Supp.2d 682, 687 (D.N.J. 1998) (finding that although the forum selection clause did not specify which entity's principal place of business established the forum, a plaintiff's inability to "be certain as to where it should bring suit does not mean that the forum selection clause no longer is mandatory"). Neither party, however, raises an issue with the lack of specificity in the forum selection clauses.

7

"The question of the scope of a forum selection clause is one of contract interpretation." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (quoting *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997)). A "[c]ourt 'must first look to the text of the contract to determine whether it unambiguously states the parties' intentions.'" *Kocks Crane, Inc.*, 2006 WL 3677803, at *2 (quoting *John Wyeth & Brother Ltd.*, 119 F.3d at 1074). In making such a determination, a "court not only asks whether the language is clear, but also hears the proffer of the parties and determines if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Id.* (quoting *John Wyeth & Brother Ltd.*, 119 F.3d at 1074).

### III. PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO THE FORUM SELECTION CLAUSES

The meaning of the phrase "enforce this Agreement" as presented in the forum selection clause of the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement is in contention. Defendants argue that when reading this phrase within the context and aims of the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement, "the forum selection clause[s] … encompass any lawsuit where the enforceability of the [Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement] is in dispute." (ECF No. 37 p. 7.) I, however, find that through this broad reading, defendants distort the ordinary and simple meaning of the forum selection clauses. To say "enforce this Agreement" is to the say that the origin of the dispute is related to the "Agreement" at hand, *i.e.,* not to any other agreement or related agreement. Thus, the forum selection clauses will apply only if plaintiff's claims seek to "enforce" the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement.

As "master of the complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987), plaintiff pleaded five causes of action in connection to three

8

separate transactions. While plaintiff's fraudulent transfer claim was raised "within the meaning of the Pennsylvania … and/or Colorado" fraudulent transfer statutes, only plaintiff's single breach of contract claim — as related solely to the Cowlitz Transaction — potentially triggers the relevant forum selection clause. (ECF No. 1 pp.44–47, 49, 50.)[6] The breach of contract claim is, however, raised in the alternative and becomes subsumed within the total amount sought under the fraudulent transfer claim.[7]

In reviewing the complaint, I find that plaintiff's primary claim is to avoid *all* of the transfers the Receivership Parties made to defendants. *See In re Charys Holding Co., Inc.*, 443 B.R. 628, 634–35 (Bankr. D. Del. 2010) (differentiating between "core" and "non-core" claims when determining that the forum selection clause did not apply to the fraudulent transfer claim); *see also Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010) (noting that receivership cases may be "analogous" to bankruptcy cases). While defendants would have me pigeonhole plaintiff's claims as only seeking to void the forgiveness of the loans under the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement (ECF No. 37 pp.5, 6), plaintiff's primary claim is not so restrictive.[8] "[E]nforce[ment]" of the Amended Dubai Settlement Agreement

---

[6] The Cowlitz Promissory Note may be relevant to plaintiff's breach of contract claim. Thus, I note that the Cowlitz Promissory Note includes the following forum selection clause: "Any legal action or other legal proceeding relating to th[e] [Cowlitz Promissory] Note or the enforcement of any provision [therein] … may be brought or otherwise commenced in any state or federal court located in the County of Denver, Colorado." (ECF No. 1 p.134.) This selection clause is, however, not mandatory and does not affect the analysis of the Motion. *See Pro Custom Solar LLC*, 2021 WL 2177513, at *3; *Sept. Props. LLC,* 2018 WL 4466066, at *5, 6.

[7] For example, given the loan forgiveness scheme, approximately $700,000 of the total loan made in the Cowlitz Transaction is not subject to the forum selection clause in the Cowlitz Amended Settlement Agreement.

[8] Defendants also argue that the because the Pennsylvania and Colorado fraudulent transfer statutes only provide a remedy to "creditors" of the Receivership Parties, not for the Receivership Parties themselves, plaintiff — who "does not represent any creditors"— cannot seek relief related to the original transfers made. (ECF No. 37

9

and Amended Cowlitz Settlement Agreement would mean that plaintiff seeks to forgive the loans that he is in fact seeking the return of. Plaintiff, however, clarifies that he "relies on the [Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement] solely as evidence of [the] fraudulent transfer[s] by the [Receivership Parties]." (ECF No. 36 p. 25.) Plaintiff confirmed the same at oral argument.

Plaintiff's claims here are akin to those brought by a bankruptcy trustee to preserve the assets of the bankruptcy estate for the benefit of creditors. *See Summers v. Perkins*, 81 P.3d 1141, 1143 (Colo. App. 2003) (noting that a bankruptcy trustee steps into the shoes of a creditor for purposes of asserting claims under state fraudulent conveyance acts for the benefit of all creditors"). Since the fraudulent transfer claim — as the primary claim — did not arise from the Amended Dubai Settlement Agreement and Amended Cowlitz Settlement Agreement, but rather by operation of statute, I find that the forum selection clauses are not applicable. *See In re Charys Holding Co., Inc.*, 443 B.R. at 634–35 (finding that because the fraudulent transfer claim "arose by operation of statute rather than from contract," the forum selection clause did not apply); *Zayed v. Peregrine Fin. Grp., Inc.*, No. 12-00269, 2012 WL 2373423, at *2 (D. Minn. June 22, 2012) (finding that although the forum selection clause broadly applied to "all actions … arising directing or indirectly" to the underlying

---

p. 11.) While the applicability of the fraudulent transfer statutes is a dispositive issue, I note that plaintiff is acting within his role as the Court-appointed receiver when raising this claim for the benefit of the victims — *i.e.*, the creditors — of Smith's fraudulent conduct. (*See* ECF No. 1 p. 4 (noting that plaintiff as the Court-appointed receiver is responsible for "marshaling and preserving all assets" of the Receivership Parties).)

10

agreement, the forum selection clause was not triggered since the fraudulent transfer claim did not arise out of the agreement).[9]

Accordingly,

**IT IS** on this  4th day of **January 2023**   **ORDERED** that:

1. The Motion is **DENIED**.

2. The Clerk of the Court is directed to terminate ECF No. 26.

3. A telephone status conference is scheduled for January 13, 2023 at 10:30 a.m.  The dial in number is 1-888-684-8852 and the access code is 310-0383#.

> /s/ Edward S. Kiel
> **EDWARD S. KIEL**
> **UNITED STATES MAGISTRATE JUDGE**

---

[9] In attempts to distinguish *Zayed* from this action, defendants note that no breach of contract claim was raised in *Zayed*. (ECF No. 37 pp.8–10.)  This distinction is irrelevant.  The presence of a breach of contract claim would have no impact on the *Zayed* court's analysis as to whether the statutory fraudulent transfer claim was bound to the forum selection clause.

11